**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 12-7155**

---

UNITED STATES OF AMERICA,

              Plaintiff – Appellee,

     v.

JATIA TAVARUS BARRETT,

              Defendant – Appellant.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Jr., Chief District Judge. (1:08-cr-00490-WO-1; 1:10-cr-00123-WO-2)

---

Argued: January 28, 2014          Decided: May 22, 2014

---

Before KING, SHEDD, and THACKER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED**: Michael W. Patrick, LAW OFFICE OF MICHAEL W. PATRICK, Chapel Hill, North Carolina, for Appellant. Robert Michael Hamilton, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF**: Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant Jatia Tavarus Barrett appeals from the district court's denial of his motions for sentence reductions, pursued under 18 U.S.C. § 3582(c)(2) and the Fair Sentencing Act of 2010 (the "FSA"). As explained below, we affirm.

I.

A.

Barrett was a street-level drug dealer in and around Stanly County, in the Middle District of North Carolina. On December 15, 2008, a grand jury in that district returned an indictment charging Barrett with conspiracy to distribute five grams or more of crack cocaine, in contravention of 21 U.S.C. § 846, plus three substantive counts of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (the "2008 case"). On February 4, 2009, Barrett pleaded guilty to one of the distribution counts, in exchange for the United States Attorney's agreement to dismiss the other three charges. Because Barrett had a prior conviction for a felony drug offense, he faced a statutory maximum penalty of life in prison.

Barrett's sentencing in the 2008 case took place in Winston-Salem on March 10, 2010. The presentence report ("PSR") deemed Barrett responsible for 22.8 grams of crack cocaine. The PSR further recommended that he be categorized as a career

2

offender pursuant to section 4B1.1 of the Sentencing Guidelines (the "career offender provision"), on account of his prior convictions for robbery and cocaine distribution.[1] Because Barrett faced a potential life sentence, application of the career offender provision resulted in an offense level of 37 and a criminal history category of VI. See USSG § 4B1.1(b). After receiving a three-level reduction in offense level for acceptance of responsibility, Barrett's advisory Guidelines range was 262 to 327 months in prison. The district court adopted the PSR without amendment.

During the sentencing proceedings, the district court observed that Barrett's advisory Guidelines range would have been significantly lower if his offense of conviction had involved powder cocaine instead of crack cocaine, stating that "there is a lot of activity going on in . . . Congress as to that [disparity]." J.A. 58.[2] The court asked, "Why should the Court not consider at least that range, 188 to 235 [months, the

---

[1] The career offender provision mandates an increased sentence for a defendant convicted of a controlled substance offense, if he has previously been convicted of at least two other qualifying felony offenses. Specifically, it provides for a criminal history category of VI and an offense level dependent on the statutory maximum applicable to the offense of conviction. See USSG § 4B1.1(b).

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

3

career offender range for a powder cocaine offense], when it considers where an appropriate sentence in this case would be?" Id.[3] The court then varied downward on that basis, imposing a sentence of 200 months. The judgment in the 2008 case was entered on March 24, 2010.

Six days later, on March 30, 2010, Barrett was indicted anew, for conspiracy to distribute crack cocaine, in contravention of 21 U.S.C. § 846, plus distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (the "2010 case"). On June 9, 2010, Barrett pleaded guilty to the conspiracy charge in the 2010 case in exchange for dismissal of the distribution count. Under the law that applied at the time of his guilty plea, Barrett again faced a life sentence.

Soon thereafter, however, Congress passed the FSA, which took effect on August 3, 2010. See Pub. L. No. 111-220, 124 Stat. 2372. By increasing the drug quantities necessary to trigger the statutory mandatory penalties for crack cocaine offenses, the FSA aimed to reduce the disparity between crack and powder cocaine sentences. The FSA also directed the

---

[3] The district court's commentary concerning the "disparity between crack cocaine and powder cocaine" referred to what was then the widely held belief that the 100-to-1 crack-to-powder sentencing ratio established by statute and embodied in the Guidelines was unjustified and race-based. See J.A. 63; see also Dorsey v. United States, 132 S. Ct. 2321, 2328-29 (2012).

4

Sentencing Commission to promulgate conforming amendments to the Guidelines, which the Commission did by, inter alia, adopting Amendment 750 in April 2011.[4]

Barrett's sentencing hearing in the 2010 case occurred on August 18, 2010, just fifteen days after the FSA's effective date. His counsel did not then contend, however, that the FSA had impacted Barrett's advisory Guidelines range. The PSR — to which Barrett did not object — held him responsible for 52.3 grams of crack, and he was again classified as a career offender. In light of the pre-FSA statutory maximum of life, and factoring in Barrett's acceptance of responsibility, the PSR recommended the same Guidelines range that applied in the 2008 case: 262 to 327 months in prison.

As in the 2008 case, the sentencing court in the 2010 case elected to vary downward on the basis of the crack-powder disparity. With explicit reference to "the reasons set forth . . . in the sentencing in the [2008 case]," the court concluded that the "guideline range . . . that would have been established by the powder cocaine penalties [was] sufficient." J.A. 134.

_____

[4] Part A of Amendment 750 to the Sentencing Guidelines revised aspects of the Drug Quantity Table in Guidelines section 2D1.1 to account for the changes in the statutory penalties made in the FSA. See USSG app. C, amend. 750 (2011). The Sentencing Commission subsequently voted to include Part A in Guidelines section 1B1.10 as an amendment that may be considered for retroactive application. See id., amend. 759.

Accordingly, Barrett was sentenced to another 200-month term, to be served concurrently with the 200-month sentence that was imposed five months earlier in the 2008 case. The judgment in the 2010 case was entered on September 7, 2010.

While incarcerated, Barrett provided substantial assistance to the government. In recognition thereof, on June 8, 2011, the United States Attorney filed a motion in the district court pursuant to Federal Rule of Criminal Procedure Rule 35(b), seeking reductions in each of Barrett's sentences. On July 8, 2011, the court granted the motion and reduced each of Barrett's sentences to 100 months, to run concurrently.

B.

Six months later, on January 11, 2012, Barrett filed a pair of pro se motions pursuant to 18 U.S.C. § 3582(c)(2), seeking a further reduction by the district court of his concurrent 100-month sentences. Generally, a court lacks authority to modify a term of imprisonment "once it has been imposed." See 18 U.S.C. § 3582(c). Section 3582(c)(2), however, creates a narrow exception to the general rule, by authorizing a sentencing court to modify a defendant's term of imprisonment if it was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."

In his pro se motions, Barrett relied on Amendment 750, which sought to harmonize the base offense levels in the

6

Guidelines with the new statutory penalties wrought by the FSA. The government opposed Barrett's § 3582(c)(2) motions, explaining that Amendment 750 had no impact on his concurrent sentences because they were not based on a sentencing range that was affected by Amendment 750, but on the career offender provision, which remained unchanged. Barrett was then appointed counsel, who responded to the government's opposition and agreed that Amendment 750 did not lower Barrett's sentencing range. Barrett's counsel argued, however, that the FSA's more lenient statutory maximums, if applied, would have resulted in a lower sentencing range under the career offender provision.[5] At that

---

[5] To explain Barrett's contention more concretely, we consider how his advisory Guidelines ranges in the two cases would have been calculated with and without the benefit of the FSA.

Absent the FSA

- In both the 2008 and 2010 cases, Barrett was subject to statutory maximum sentences of life imprisonment.

- Because he was classified as a career offender in each case, Guidelines section 4B1.1(b) provided the appropriate base offense level. Since the statutory maximum for each underlying offense was life imprisonment, the base offense level in each case was 37.

- After receiving a three-level reduction in each case for acceptance of responsibility pursuant to Guidelines section 3E1.1, Barrett's offense level was 34. Combined with an automatic criminal

(Continued)

7

time, our precedent foreclosed any retroactive application of the FSA, see United States v. Bullard, 645 F.3d 237, 248 (4th Cir. 2011), but Barrett's appointed counsel properly sought to preserve Barrett's right to seek a sentence reduction "[s]hould the Supreme Court or Congress determine that the reduced penalties contained within the [FSA] . . . are applicable to [Barrett]." J.A. 225.

As if on cue, the Supreme Court, during the pendency of Barrett's § 3582(c)(2) motions, rendered a key decision concerning retroactivity issues relating to the FSA. See Dorsey v. United States, 132 S. Ct. 2321 (2012). In Dorsey, the Court

---

history category of VI, his advisory Guidelines range was 262 to 327 months.

Applying the FSA

- Under the FSA, Barrett would have been subject to a reduced statutory maximum sentence of forty years in each case.

- Pursuant to Guidelines section 4B1.1(b), where the statutory maximum for the underlying offense is twenty-five years or more (but not life), the base offense level is 34.

- After receiving a three-level reduction for acceptance of responsibility pursuant to Guidelines section 3E1.1, Barrett's offense level would have been 31. Combined with an automatic criminal history category of VI, his advisory Guidelines range would have been 188 to 235 months.

8

recognized "six considerations" that, "taken together, convince[d it] that Congress intended the [FSA's] more lenient penalties to apply to those offenders whose crimes preceded August 3, 2010, but who were sentenced after that date," as Barrett was in the 2010 case. See id. at 2331.[6] The Court did not, however, decide whether the FSA should also be applied to defendants who were sentenced prior to its effective date, as Barrett was in the 2008 case.

On June 27, 2012, without reference to the potential impact of Dorsey, the district court entered orders denying Barrett's § 3582(c)(2) motions, concluding that the statutory requirements had not been satisfied. Barrett timely noticed two appeals, which were consolidated for our consideration. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

---

[6] As the Dorsey Court explained, the "six considerations" illuminating Congress's intent included: (1) that "the 1871 saving statute [1 U.S.C. § 109] permits Congress to apply a new Act's more lenient penalties to pre-Act offenders without expressly saying so"; (2) that the Sentencing Reform Act, 18 U.S.C. § 3551 et seq., established a "special . . . background principle" of retroactivity for Guidelines sentencing; (3) that language in the FSA implies that Congress intended to follow the Sentencing Reform Act's "background principle"; (4) that failure to apply the FSA to the post-enactment sentencing of pre-enactment offenders would create disparities of a kind that the Sentencing Reform Act and the FSA were intended to prevent; (5) that failure to apply the FSA to the post-enactment sentencing of pre-enactment offenders would actually give rise to new disparities not previously present; and (6) the lack of strong countervailing considerations. See 132 S. Ct. at 2331-35.

II.

We review for abuse of discretion a district court's denial of a motion for a sentence reduction made pursuant to 18 U.S.C. § 3582(c).  See United States v. Munn, 595 F.3d 183, 186 (4th Cir. 2010).  Any sentencing error that "does not affect [the] substantial rights" of the defendant is harmless and "must be disregarded."  See Fed. R. Crim. P. 52(a).

III.

Barrett's appellate contention is that the district court erred in denying his 18 U.S.C. § 3582(c)(2) motions for reduced sentences in the 2008 and 2010 cases.  That contention implicates two issues.  First, we must assess whether the more lenient statutory penalties provided for in the FSA are retroactively applicable to either of Barrett's sentences, resulting in a lower advisory Guidelines range under the career offender provision.  Second, if the FSA is applicable to either of Barrett's sentences, we must decide whether § 3582(c)(2) is an appropriate vehicle for seeking relief.

A.

Barrett's assertion that the FSA applies retroactively to the 2008 case, though perhaps viable when first raised, has been foreclosed by intervening precedent in this Court.  After Barrett filed and briefed this appeal, we rendered our decision

10

in United States v. Black, 737 F.3d 280 (4th Cir. 2013). Like Barrett, the defendant in Black urged us to extend the Supreme Court's holding in Dorsey v. United States, 132 S. Ct. 2321 (2012), insisting that the "six considerations" identified by the Dorsey Court applied with equal force to sentences imposed prior to the effective date of the FSA. Unconvinced, we concluded that Dorsey did not disturb our earlier ruling in United States v. Bullard, 645 F.3d 237, 249 (4th Cir. 2011), that the FSA does not apply retroactively to a defendant sentenced before August 3, 2010. See Black, 737 F.3d at 287. Furthermore, we rejected Black's contention that a § 3582(c)(2) proceeding was tantamount to a "new" sentencing proceeding, and thus sufficient to trigger application of the FSA. See id.

Barrett's contentions with respect to the 2008 case fall squarely within the ambit of Black and Bullard, and therefore must fail.[7] Accordingly, the district court did not err in denying Barrett's § 3582(c)(2) motion in that case.

---

[7] Barrett attempts to distinguish his 2008 case from Black, emphasizing that Black was sentenced to a statutory mandatory term of imprisonment, while Barrett's sentence in the 2008 case was driven by the career offender provision. The sole consideration in calculating Barrett's sentencing range under the career offender provision, however, was the applicable statutory maximum, foreclosing Barrett's asserted distinction.

11

Turning to Barrett's sentence in the 2010 case, there is no doubt that, in light of Dorsey, the FSA is applicable. Likewise, the parties do not dispute that application of the FSA to the 2010 case would have lowered Barrett's advisory Guidelines range under the career offender provision. But we must yet consider whether Barrett's request for a sentence reduction predicated on a retroactive application of the FSA is cognizable under § 3582(c)(2).

The government maintains that § 3582(c)(2) is not an appropriate vehicle for the relief Barrett seeks, asserting that this issue, too, was conclusively resolved by Black. There, we explained that, even if Black had been entitled to the benefit of the FSA, that right could not be vindicated under § 3582(c)(2), which applies only to retroactive amendments to the Guidelines, as opposed to statutory changes made by Congress. See Black, 737 F.3d at 286-87 (citing United States v. Blewett, 746 F.3d 647, 656 (6th Cir. 2013) (en banc) ("[A] mandatory minimum subsequently lowered by Congress is not, as § 3582(c)(2) requires, a 'sentencing range . . . subsequently . . . lowered by the Sentencing Commission.'")).

Barrett counters that Black's discussion of the scope of § 3582(c)(2) is not controlling because that explanation was dicta; that is, having held that Congress did not intend for the

12

FSA to apply retroactively to Black's sentence, there was no need for the court to evaluate whether § 3582(c)(2) <u>could</u> have been used to seek a sentence modification on the basis of the FSA. <u>See, e.g.</u>, <u>Pittston Co. v. United States</u>, 199 F.3d 694, 703 (4th Cir. 1999) (recognizing as dicta any "statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundation of the holding — that, being peripheral, may not have received the full and careful consideration of the court that uttered it"). Barrett urges us to interpret § 3582(c)(2) broadly, predicated on the premise that Congress intended for the FSA's new statutory sentences to apply immediately and uniformly in conjunction with the Guidelines, including § 3582(c)(2). Such a contention, though something of a reach, is not without support. <u>See</u> <u>Blewett</u>, 746 F.3d at 685-90 (Rogers, J., dissenting).[8]

Frankly, neither party has proposed a particularly desirable outcome. Either we overlook the fact that Barrett was

---

[8] In his dissent to the Sixth Circuit's en banc majority in <u>Blewett</u>, Judge Rogers explained his view that "each of the interpretive foundations for the <u>Dorsey</u> Court's analysis applies by analogy to the application of the [FSA's] statutory minimums under § 3582(c)(2)." 746 F.3d at 685. Accordingly, his opinion reasoned that "when a [post-FSA] sentence is properly calculated under 3582(c)(2) because a guideline has been retroactively changed, the new statutory minimums should be applied as well. In other words, when a [post-FSA] sentencing court properly has before it the calculation of a sentence, the court should use the [FSA] minimums." <u>Id.</u>

13

entitled to be sentenced under the FSA in the 2010 case, or we stretch the limits of § 3582(c)(2) in the service of fairness and equity. Fortunately, Rule 52(a) mandates a more palatable result: assuming the district court erred in denying Barrett's § 3582(c)(2) motion with respect to the 2010 case, we must nevertheless affirm because such error was demonstrably harmless. See United States v. Hargrove, 701 F.3d 156, 161 (4th Cir. 2011). As our Court has recognized, a sentencing error is harmless "if the resulting sentence was not longer than that to which the defendant would be otherwise subject." See United States v. Metha, 594 F.3d 277, 283 (4th Cir. 2010); see also United States v. Revels, 455 F.3d 448, 452 (4th Cir. 2006) (explaining that a remand for resentencing is little more than "an empty formality" if the sentence the court would impose on remand is a "foregone conclusion"). As the government points out, a remand in the 2010 case for application of the FSA and Dorsey would yield no change to Barrett's sentence.

Absent application of the FSA, Barrett faced an advisory Guidelines range of 262 to 327 months based on the career offender provision. Like Congress, however, the sentencing court deemed this sentencing range to be unfair in light of the more lenient penalties applicable to powder cocaine offenders. Accordingly, the court varied downward, explicitly because of the advisory range — 188 to 235 months — that would have

14

applied to a similarly situated offender charged with conspiring to distribute the same quantity of powder cocaine. That same advisory range would apply — and for the same reasons — if Barrett were to be resentenced in light of <u>Dorsey</u> and the FSA. Significantly, the crack-powder disparity was the only reason given by the court for its downward variance. Thus, there is no basis for concluding that the court would impose a different sentence in the 2010 case on remand. Essentially, the sentencing court used its discretion to afford Barrett relief under the FSA even before the Supreme Court determined that any relief was due. We should acknowledge the district court's wisdom, rather than requiring it to conduct remand proceedings on another sentence that is a "foregone conclusion." <u>See</u> <u>Revels</u>, 455 F.3d at 452.

## IV.

Pursuant to the foregoing, we affirm the judgments of the district court.

<u>AFFIRMED</u>