11-2539-cr (L)
*U.S. v. Lee, et. al*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

 

    At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of August, two thousand sixteen.

PRESENT:
        JOSÉ A. CABRANES
        ROSEMARY S. POOLER
        GERARD E. LYNCH
           *Circuit Judges.*
_____

UNITED STATES OF AMERICA,

        *Appellee,*

      v.                       Nos. 11-2539-cr, 11-2543-cr,
                                     11-2543-cr, 11-2834-cr

HISAN LEE, also known as Ice, also known as Devontea Clark, DELROY LEE, also known as Specs, also known as DJ, LEVAR GAYLE, also known as Train, SELBOURNE WAITE, also known as Silky,

        *Defendants-Appellants,*

HIBAH LEE, MARK GABRIEL, also known
as Bubbles, BOBBY MOORE, JR., also known
as Pops, ANDRE DAVIDSON, also
known as O Dog, BOBBY SAUNDERS, also
known as Bobby Moore, CARMEN MOORE,
also known as Munchie, TYRONE MOORE,
also known as Puss, ROBERT MORRISON,
also known as Chips, DAKWAN EDWARDS,
also known as Doc, MARQUISH JONES, also
known as Lunchbox, MARK HART, also
known as Movements, RAHEEM TUCKER,
also known as Ras, DEMETRI YOUNG, also
known as Walter Malone, CHRISTOPHER
DIAZ, also known as X Box, ANTHONY
MICHAEL DIAZ, also known as Little X,
PAUL LOVE, AARON BIRCH, also known as
A, KEVIN BECKFORD, also known as Carl
Beckford, JERMELL FALZONE, also known
as Mel,

*Defendants.**

_____

| | |
|---|---|
| FOR APPELLEE: | MARGARET GARNETT, Assistant United States Attorney (Jessica Fender, Won Shin, David Zhou, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY. |
| FOR HISAN LEE: | B. Alan Seidler, Esq., New York, NY. |
| FOR DELROY LEE: | Winston Lee, Esq., New York, NY. |
| FOR LEVAR GAYLE: | Ruth M. Liebesman, Esq., Paramus, NJ. |
| FOR SELBOURNE WAITE: | Susan V. Tipograph, Esq., New York, NY. |

_____

*The Clerk of Court is directed to amend the official caption to conform to the caption above.

Appeal from the United States District Court for the Southern District of New York (Barbara S. Jones, *Judge*).

**UPON DUE CONSIDERATION IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **REMANDED** for resentencing in part.

Hisan Lee, Delroy Lee, Selbourne Waite, and Levar Gayle appeal from judgments of conviction following a six-week jury trial. The indictment charged Hisan Lee, Delroy Lee, Waite, and Gayle, along with eighteen others, with participating in a racketeering enterprise known as the DeKalb Avenue Crew, as well as conspiring to distribute narcotics and to commit robberies, committing a number of specific robberies and murders, and using firearms in furtherance of those crimes. Gayle was charged only with robbery conspiracy, and with a single robbery, along with associated firearms and murder charges. The defendants were found guilty of all counts against them, except that Selbourne Waite was acquitted of the counts related to the murder of Bunny Campbell. Most of the issues raised on appeal are resolved in this order, and the rest in an accompanying opinion. We assume the parties' familiarity with the underlying facts and the procedural history of the case.

## I.      Delroy Lee's Suppression Motions

### A.      The Photo Identification

Delroy Lee argues that the district court erred in denying his motion to suppress a witness's photographic identification of him without an evidentiary hearing, claiming that the photo array must have been presented in a suggestive manner. We disagree.

3

To decide whether the introduction of an out-of-court identification at trial would deprive a defendant of due process, a district court first determines whether the police used an unnecessarily suggestive identification procedure; if a suggestive procedure was used, the court proceeds to "consider whether the improper identification procedure so tainted the resulting identification as to render it unreliable and therefore inadmissible." *Perry v. New Hampshire*, 132 S. Ct. 716, 722 (2012). If the procedures were not unduly suggestive, the identification is generally admissible because "any question as to the reliability of the witness's identifications goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). We review the district court's factual determinations with respect to the admissibility of identification evidence for clear error. *United States v. Douglas*, 525 F.3d 225, 242 (2d Cir. 2008).

The challenged photo identification was made by the victim of a home-invasion robbery that occurred in January 2005. Shortly after the robbery, the witness viewed "a whole lot of photos" on a computer, Tr. 3293, and told the police that the robber "kind of look[ed] like" a person in a particular photograph. Tr. 3294, 3310-11, 3320. The identification was mistaken; the individual in the photograph was incarcerated on the day of the robbery. Five years later, however, in February 2010, the witness identified Delroy Lee from a photo array containing six photographs as "the guy with the gun," the robber

4

who was addressed by his fellow robbers as "D." Tr. 3297. Evidence of that identification was admitted at trial, and Delroy Lee's attorney cross-examined the witness extensively regarding both the 2010 identification of Delroy Lee, and the earlier identification of someone else.

Delroy Lee argues that there must have been something suggestive about the way the photographic array was shown, because the victim saw the robber only for a short period of time, and identified him as the robber five years after the fact. But he points to no evidence, either submitted with his suppression motion or developed during the extensive cross-examination of the victim-witness, indicating anything suggestive about the manner in which the photo array was presented. Moreover, the district court's conclusion that the photo array itself was not suggestive was not clearly erroneous. *See Maldonado- Rivera*, 922 F.2d at 973 (stating that the relevant question for suggestiveness of a photo array is "whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." (alterations and internal quotation marks omitted)). In the six-person photo array, all of the men appear reasonably similar, and Delroy Lee's photograph does not stand out in any suggestive way. In the absence of any evidence that the photo array was suggestive, or that it was presented in a suggestive way, the district court did not err in denying the suppression motion. *See United States v. Leonardi*, 623 F.2d 746, 755 (2d Cir. 1980).

5

We also reject Delroy Lee's contention that because he was in custody and available for an in-person lineup, a photo array should not have been used. We have long held that "a witness may testify to a prior out-of-court identification based on a photo array if that array was not tainted," and declined to "declare a *per se* rule requiring identification by lineup whenever a suspect is in custody." *United States v. Anglin*, 169 F.3d 154, 161 (2d Cir. 1999). This, and Delroy Lee's various other related arguments, go to the reliability of the identification, not its admissibility.

### B.     The Search at the Site of Bunny Campbell's Murder

Delroy Lee next argues that evidence seized without a warrant at the scene of the Bunny Campbell homicide should have been suppressed. The district court rejected that argument after an evidentiary hearing, holding that the initial warrantless search conducted by the New York Police Department's Emergency Services Unit ("ESU") was justified under both the exigent-circumstances and protective-sweep exceptions, and that the subsequent seizure of a gun, money, and drug paraphernalia was permissible as those items had been exposed to plain view by the prior, justified search.

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (internal quotation marks omitted). But a warrant is not required "where exigent circumstances demand that law enforcement agents act without delay," *United States v. MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990) (en banc), or where

6

officers engage in a "protective sweep," during which officers making an arrest may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). We have extended *Buie* beyond arrest situations, because "*Buie*'s logic . . . applies with equal force when officers are lawfully present in a home for purposes other than the in-home execution of an arrest warrant, at least where their presence may expose the officers to danger that is similar to, or greater than, that which they would face if they were carrying out an arrest warrant." *United States v. Miller*, 430 F.3d 93, 99 (2d Cir. 2005). Under the plain view exception, once law enforcement officers "are lawfully in a position from which they view an object" to which they "have a lawful right of access," and its "incriminating character is immediately apparent," the officers "may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). We review the district court's legal conclusions on a motion to suppress de novo, while its factual determinations, viewed in the light most favorable to the government, are reviewed for clear error. *United States v. Ferguson*, 702 F.3d 89, 93 (2d Cir. 2012).

The district court did not err in denying the suppression motion. Police officers arrived at the scene of a murder, in which someone had recently been shot multiple times in the head. It was reasonable for them to perform a protective sweep of areas where a shooter might still have been hiding. There is no evidence that officers searched or

7

opened doors to any places where a person could not hide. That the evidence in question was not seized during the protective sweep itself, but was identified and seized the following day, does not render the evidence ill-gotten. The ESU officers performing the protective sweep were looking for dangerous individuals, not for evidence, and they were under no obligation to close the doors to rooms or closets after finding no one hiding within. The district court's finding that the items were exposed to plain view during the protective sweep, and its rejection of Delroy Lee's attack on the credibility of the seizing officer's testimony that he found the items in plain view when he arrived at the scene the next day, were not clearly erroneous.

## II.    The *Brady/Giglio* Request

The government dismissed charges alleging that Delroy Lee had participated in a particular robbery when it turned out that he had a valid alibi for that crime. Delroy Lee now argues that the district court abused its discretion by failing to review files relating to those charges to identify any *Brady* or *Giglio* materials. *In camera* inspection, however, is required only in "rare circumstances," *United States v. Leung*, 40 F.3d 577, 583 (2d Cir. 1994), and a defendant "may not require the trial court to search through the [files] without first establishing a basis for his claim that it contains material evidence." *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 n.15 (1987). Because Delroy Lee did not ask the district court to inspect the materials, we review only for plain error. The government represented that there was no such exculpatory material, since the dismissed charge was

8

based on circumstantial evidence and not on false testimony by any of its witnesses. Nothing in the record casts doubt on that representation, or indicates that the government's files contained additional undisclosed exculpatory or impeachment material. The district court thus did not err, let alone plainly err, in declining to review the government's files.

## III. Sufficiency of the Evidence (Hisan and Delroy Lee)

"A defendant challenging the sufficiency of the evidence bears a heavy burden." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011). A jury verdict must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Persico*, 645 F.3d 85, 105 (2d Cir. 2011) (internal quotation marks omitted). A "court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Espaillet*, 380 F.3d 713, 718 (2d Cir. 2004).

### A. The Existence of a RICO Enterprise

Hisan Lee argues that his racketeering-related convictions must be vacated because there was insufficient proof that the DeKalb Avenue Crew was an "enterprise" within the meaning of the RICO statute. The RICO statute defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

9

Congress deliberately defined the term "as broadly as possible." *United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir. 1989) (en banc).

The evidence presented at the trial showed that the DeKalb Avenue Crew consisted of over a dozen members centralized around DeKalb Avenue, that its purpose was to enrich its members through narcotics trafficking and armed robberies, and that the members worked together for over a decade to effectuate this purpose. This is sufficient to meet the enterprise requirement of the RICO statute. *See generally Boyle v. United States*, 556 U.S. 938, 948 (2009) (holding that RICO enterprise does not require a hierarchical structure, a chain of command, or other business-like attributes).

### B. The Patrick Taylor and Bunny Campbell Homicides

Delroy Lee argues that the evidence was insufficient to establish his involvement in the Patrick Taylor and Bunny Campbell homicides because the government presented neither eyewitnesses to the murders nor physical evidence connecting him to the murders. The argument is without merit. No particular type of evidence is required, so long as the evidence taken together is such that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Persico*, 645 F.3d at 105 (internal quotation marks omitted). The statements that Delroy Lee characterizes as "hearsay" were all admissible non-hearsay because they were either his own statements, Fed. R. Evid. 801(d)(2)(A), or statements of co-conspirators during and in furtherance of the conspiracy, Fed. R. Evid. 801(d)(2)(E). Multiple witnesses testified that Delroy Lee

10

described committing the murder and robbery of Taylor, and about his plan to take the cocaine stolen from Taylor to Virginia; those accounts were corroborated by the fact that a large quantity of cocaine was discovered in a car driven by Delroy Lee on his way to Virginia. Delroy Lee's prison bunkmate testified that Lee confessed to the murder of Campbell, and several other witnesses testified that they had heard either directly or indirectly from Delroy Lee that he was involved in the robbery and murder of Campbell. That evidence was sufficient to permit a jury to find beyond a reasonable doubt that Delroy Lee participated in the two murders.

### C. The Campbell Murder's Connection to the Enterprise

Delroy Lee also argues that the evidence was insufficient to demonstrate that the murder of Campbell was for the purpose of "maintaining or increasing [his] position" in the DeKalb Avenue Crew, as required to constitute a violation of 18 U.S.C. § 1959(a). We disagree. That element is established if the jury may infer from the evidence "that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992). Where, as here, the murder in aid of racketeering is a felony murder, the element of purpose or motivation need only be shown with respect to the underlying felony – in this case, the robbery. *United States v. Mapp*, 170 F.3d 328, 335-36 (2d Cir. 1999).

11

The jury heard abundant evidence that the Crew's primary business was robbing drug dealers in order to obtain and sell drugs, which is precisely what happened in the Campbell robbery. Additionally, telephone records show a likelihood of consultation with other members of the DeKalb Avenue Crew on the day of the murder. Ample evidence thus supports the finding that the murder of Campbell was in furtherance of the enterprise.

### D.	The Robbery at 4061 Murdoch Avenue

Delroy Lee challenges the sufficiency of the evidence of his involvement in the 4061 Murodch Avenue robbery for which he was convicted. His argument, however, rests entirely on his contention that the victim-witness's identification of him, discussed above, was inherently incredible. The credibility of witnesses is a question for the jury, *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012), and the jury here was fully informed of the issues relating to the credibility of the identification. There is thus no merit to the challenge.

### E.	Firearms Charges

Delroy Lee also challenges the sufficiency of the evidence to support his convictions on various firearms charges. Most of his arguments focus on the evidence supporting the predicate crimes underlying the firearms charges. Because we reject those arguments, the accompanying firearms challenges are also rejected. Additionally, Delroy Lee argues that his conviction as a felon in possession of a firearm in connection with a

12

gun found at the scene of the Bunny Campbell murder is not supported by sufficient evidence that the gun in question belonged to him. The jury, however, was entitled to infer that the gun belonged to Delroy Lee, because it was recovered from a hallway closet immediately adjacent to the bedroom that he shared with his girlfriend and it was matched through ballistics examination to a gun that was used by Selbourne Waite, a co-conspirator, in a robbery shortly before the Campbell murder.

## IV. The Section 924(j) Counts

Delroy Lee argues that the district court lacked jurisdiction over the counts charging him with violating 18 U.S.C. § 924(j)(1) and (2), because the murders did not take place within the "special maritime and territorial jurisdiction of the United States," as defined in 18 U.S.C. § 1111(b). That argument must be rejected for the same reason the Fourth Circuit rejected it in *United States v. Young*, 248 F.3d 260, 275 (4th Cir. 2001), in which the court noted that § 924(j) "incorporates only the *definition* of murder" set out in § 1111(a), not the jurisdictional basis set out in § 1111(b). Rather, § 924(j) sets forth its own independent jurisdictional basis by incorporating 18 U.S.C. § 924(c), which covers the commission of "any crime of violence or drug trafficking crime . . . for which [a] person may be prosecuted in a court of the United States." 18 U.S.C. § 924(c)(1)(A); *see Young*, 248 F.3d at 275.

13

## V.     The District Court's Trial Rulings

The appellants challenge various rulings made by the district court during the trial. We find that each of these rulings was within the district court's broad discretion to manage the conduct of the trial and the presentation of evidence.

### A.     Defendants' Shackling at Trial

Hisan Lee argues that the district court's authorization for the marshals to restrain the defendants during trial violated his due process rights. As a matter of due process, "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Deck v. Missouri*, 544 U.S. 622, 626 (2005). During trial, physical restraints may be used "only when the court has found those restraints to be necessary to maintain safety or security; but the court must impose no greater restraints than are necessary, and it must take steps to minimize the prejudice resulting from the presence of the restraints." *United States v. Haynes*, 729 F.3d 178, 189 (2d Cir. 2013) (internal quotation marks omitted). "When the trial court has followed the proper procedures, its decision is reviewable for abuse of discretion." *Hameed v. Mann*, 57 F.3d 217, 222 (2d Cir. 1995).

Here, there was no abuse of discretion in the district judge's careful handling of this issue. First, there was evidence before the district court that the defendants had been in a jailhouse brawl and might continue to pose a risk during trial. Specifically, there was evidence that Hisan Lee had threatened at least two cooperating witnesses and sent more

than twenty messages to one of the witnesses stating that Lee would kill the witness and his family if the witness testified against him. The court also received a letter from an inmate indicating that the Lee brothers had threatened to "go crazy" in the courtroom if they perceived that their trial was going poorly. Supp. App'x 57. Given the safety concern, the district court also consulted twice with the United States Marshals Service, which advised the court that it could not assure that those attending the trial would be safe unless the defendants were placed in leg shackles during the trial. The record before the court thus warranted its conclusion that safety and security required the use of restraints. Second, while Hisan Lee argues that the jurors "must have become aware" that he was shackled during trial, Hisan Lee Br. 39, there is in fact no evidence to suggest that the jury was aware of the shackling at all. The district court took extensive precautions to ensure that the restraints were not visible, bringing the defendants in and out of the courtroom before the jury arrived, disguising the restraints with dark tape, and covering the tables with table cloths, so that the defendants' legs would not be visible. Even if the jurors had caught a brief glimpse of the shackles, "an inadvertent view by jurors of defendants in handcuffs, without more, is not so inherently prejudicial as to require a mistrial." *United States v. Taylor*, 562 F.2d 1345, 1359 (2d Cir. 1977). Because the district court found that the restraints were necessary to maintain safety and security in the courtroom, and there is no evidence that the jury was aware of the restraints, Hisan Lee's argument must fail.

15

**B.      Juror Number 11's Mental State**

Delroy Lee and Hisan Lee both argue that a juror should have been dismissed, or at least that the juror's mental state required further inquiry by the district court. We disagree. An inquiry by the district court into a juror's mental competence is not permitted unless "there is clear and incontrovertible evidence of incompetence shortly before or after jury service." *United States v. Dioguardi*, 492 F.2d 70, 78-79 (2d Cir. 1974). Because the objection is raised for the first time on appeal, we review for plain error. *United States v. James*, 712 F.3d 79, 96 (2d Cir. 2013).

Juror Number 11 recognized one of the detectives who was a witness for the government, but repeatedly stated that she could not recall from where she recognized him. Juror Number 11 admitted that she was puzzled and that "[i]t was just very strange." Tr. 2700. The district court judge asked whether the juror's inability to definitively place the detective would "cause you any discomfort or anything else," and Juror Number 11 replied: "No, no. No idea. I'm losing my mind." Tr. 2700.

Reading the statement, "I'm losing my mind," in the context of the record, it is clear that the juror meant this statement figuratively as an expression of frustration. The defendants' attempts to frame the comment as anything more than that are unconvincing.

**C.      The Cross-Examination of Bobby Moore**

Hisan Lee argues that the district court abused its discretion and denied his Confrontation Clause rights when it limited his cross-examination of Bobby Moore, Jr.,

16

the son of Bobby Saunders, who ran the drug business in the DeKalb Avenue area, regarding the criminal activities of his relatives in Jamaica. A criminal defendant must "be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony." *Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008). District courts, however, have broad discretion to supervise the "mode and order of examining witnesses" so as to make the presentation "effective for determining the truth" and to "avoid wasting time." Fed. R. Evid. 611(a). *See also United States v. Rivera*, 971 F.2d 876, 886 (2d Cir. 1992) (holding that a district court "is accorded broad discretion in controlling the scope and extent of cross-examination"). "We review evidentiary rulings, including a trial court's decision to limit the scope of cross-examination, for abuse of discretion." *United States v. White*, 692 F.3d 235, 244 (2d Cir. 2012).

On cross-examination, Hisan Lee's attorney asked Moore about an uncle who allegedly controlled the drug trade in a neighborhood in Jamaica, purportedly in order to establish that Moore comes from a powerful criminal family, which counsel argued provided "the background of the conspiracy." Tr. 1309-10. Counsel admitted, however, that there was no evidence that any of Moore's family members in Jamaica had been involved with the conspiracies charged in this case, and the district court found that "the fact that there is a family member in Jamaica without any connection to what's going on in the Bronx is not relevant," and precluded the defense from asking further questions

17

about Moore's uncle. Tr. 1309-10. The district court did not abuse its discretion in precluding further cross-examination on this topic, because the testimony solicited was not relevant to the issues at trial.

## VI.     Jury Instructions

A defendant challenging a jury instruction must demonstrate that (1) he requested a charge that "accurately represented the law in every respect" and (2) "that, viewing as a whole the charge actually given, he was prejudiced." *United States v. Applins*, 637 F.3d 59, 72 (2d Cir. 2011) (internal quotation marks omitted). No particular wording is required for an instruction to be legally sufficient, so long as "taken as a whole" the instruction correctly conveys the required legal principles. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (internal quotation marks omitted). "A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d). Where a defendant fails to make a specific and timely objection to a district court's legal instructions, those instructions are subject to review only for plain error. *United States v. Middlemiss*, 217 F.3d 112, 121 (2d Cir. 2000).

### A.     The Summary Phone Chart

Delroy Lee argues that the district court's instructions to the jury permitted the jury impermissibly to conclude that attributions on a summary chart not offered in evidence, but utilized by the government as a demonstrative aid during closing argument,

18

constituted evidence. The government may use charts to draw the jurors' attention to particular evidence culled from a voluminous set of records. *United States v. Yousef*, 327 F.3d 56, 157-58 (2d Cir. 2003). Possible prejudice stemming from the use of summary charts may be cured by an instruction by the district court to the jury to the effect that "the charts were not evidence; they were only 'graphic demonstrations of the underlying evidence,' and the jury had to determine for itself whether they fairly and accurately summarized the underlying evidence." *Id.* at 158. For example, we have held that a district court did not abuse its discretion when it allowed the government to use an enlarged map to show the distances that defendants traveled as "an aid in summation." *United States v. Reyes*, 157 F.3d 949, 955 (2d Cir. 1998) (internal quotation marks omitted).

During trial, the government sought permission to admit two charts through the case agent summarizing calls made and received on the day of the robbery and murder of Bunny Campbell. The information in the charts included the time and duration of each call and the registered subscribers of the various telephones. The first chart listed the telephone numbers, while the second chart identified the individuals who the agent had determined were "associated with" each number. Defense counsel objected to the admission of the second chart on the ground that the individuals listed as being "associated with" the cellphones were not necessarily the subscribers of the cellphones, whose identities had been stipulated by the defendants. The district court admitted only

the first chart into evidence, and suggested that, after the agent "testified who these numbers belong to," the government could create "a new chart that indicates owner of cellphone, or something along those lines, so it's quite clear you're not saying that so and so called so and so, but merely that the phone owned by that person called the phone owned attributed to the other person." Tr. 4222.

During the government's closing argument, the government showed the jury the summary chart in evidence, which listed the calls and phone numbers. The government then showed a demonstrative chart attributing individual callers to the numbers—*e.g.*, for the 8:22 a.m. call: "Hisan calls Silky (cell)." GA 1. Delroy Lee's counsel objected to the government's reference to "records" during presentation of the chart on the ground that the demonstrative was not in evidence and the use of "records" was thus misleading, and the district court instructed the jury that the demonstrative chart with the individuals' names "is not an exhibit in evidence, this is meant for your assistance and to aid [the prosecutor] in his closing statement." Tr. 4718-19. Delroy Lee did not object to the use of the demonstrative itself.

During deliberations, the jury asked to see the demonstrative chart, and upon agreement by the parties, the district court instructed the jury that:

> The chart you saw which was used during the course of closing arguments was used as an aid to the prosecutor in giving his arguments to you. It is not in evidence so it is not available. If you wish to, you can request testimony and/or records, if any, relating to the alleged affiliations or the names of persons allegedly affiliated with the phones.

20

Tr. 5110-11. The "if any" language was introduced at defense counsel's request.

Delroy Lee now argues that the district court's statements that the jury could "request testimony and/or records, if any, relating to the alleged affiliations," Tr. 5111, improperly implied that affiliations were based on fact, when, he argues, they were "purely conjecture on the part of the Government." Delroy Lee Br. 91-92. That argument fails for two reasons. First, there was evidence establishing the affiliations in the government's demonstrative chart, and it is acceptable for the government to use charts to summarize evidence culled from voluminous records. *Yousef*, 327 F.3d at 157-58. In addition to the stipulations regarding the phone's subscribers, the government methodically established the affiliations for each phone, for example through witness testimony or other evidence. Second, the district court's instructions to the jury were clear that the demonstrative chart itself was not in evidence, and that they must look to the underlying evidence to determine the affiliations, which is precisely what the district court should have done.

## B. Reasonable Doubt

For the first time on appeal, Hisan Lee challenges the reasonable doubt instruction given to the jury, arguing that the instruction was flawed because it did not "plac[e] reasonable doubt in the context of other burdens of proof." Hisan Lee Br. 32. The Supreme Court has made clear that there is no requirement "that any particular form of words be used in advising the jury of the government's burden of proof." *Victor*, 511 U.S.

21

at 5. The judge explained the reasonable doubt standard at length, stating, *inter alia*, that "[p]roof beyond a reasonable doubt must . . . be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs." Tr. 4974. The instruction "taken as a whole" correctly conveyed the required legal principles, and thus was not plainly erroneous. *Victor*, 511 U.S. at 5 (internal quotation marks omitted).

## C.    Hobbs Act Robbery

In addition to the Hobbs Act issues discussed in the accompanying opinion, Hisan Lee raises two challenges to the district court's instructions defining Hobbs Act robbery: first, that the jury should have been instructed that a "substantial" rather than "de minimis" effect on interstate commerce is required, Hisan Lee Pro Se Br. 19-28, and second, that the Hobbs Act cannot apply to narcotics robberies because the victims do not have a lawful property right or possessory interest in illegal goods or criminal proceeds, Hisan Lee Pro Se Br. 40. Neither argument was raised below, and thus we review for plain error. In any event, neither argument has merit. We have held that the Hobbs Act requires only a minimal and not a "substantial" effect on commerce. *See, e.g.*, *United States v. Celaj*, 649 F.3d 162, 168 (2d Cir. 2011) ("[I]t is well established that the burden of proving a nexus to interstate commerce is minimal." (internal quotation marks omitted)). And the Hobbs Act applies "even where the victims engaged in the buying and selling of contraband," *United States v. Wilkerson*, 361 F.3d 717, 731 (2d Cir. 2004), and

22

"is not confined either by its language or its legislative history to require some effect on goods traveling legally in interstate commerce," *United States v. Jones*, 30 F.3d 276, 286 (2d Cir. 1994).

**VII.   Sentencing Challenges (Hisan Lee and Waite)**

   **A.      Section 924(c) Mandatory Consecutive Sentences**

   Selbourne Waite and Hisan Lee were each sentenced for multiple counts of using or carrying a firearm during and in relation to, or possessing a firearm in furtherance of, a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(c). Each count carries a mandatory minimum sentence of five years for the first count of conviction and mandatory minimum consecutive sentences of 25 years for each additional count, pursuant to the statutory sentencing enhancement for "a second or subsequent conviction," *id*. § 924(c)(1)(C)(i); *see Deal v. United States*, 508 U.S. 129 (1993) (mandatory consecutive sentence applies to convictions on multiple § 924(c) counts within same indictment). Waite and Hisan Lee argue that the district court erred, because *Alleyne* v. *United States*, 133 S. Ct. 2151 (2013), requires a jury finding that a § 924(c) conviction is a "second or subsequent" conviction. Because neither Waite nor Hisan Lee raised the issue below, we review for plain error. But even on *de novo* review, the argument is without merit.

   *Alleyne* does indeed state that "[f]acts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a

23

reasonable doubt." *Alleyne*, 133 S. Ct. at 2158. *Alleyne*, however, merely extended the jury trial requirement long applicable to facts that increase the *maximum* sentence, *see Apprendi v. New Jersey*, 530 U.S. 466 (2000), to facts that create a mandatory *minimum* sentence. It is well established, however, that the *Apprendi* rule does not apply to "facts" regarding a defendant's prior (or, *a fortiori*, contemporaneous) convictions, which are matters of law, to be determined by the court rather than a jury. *Almendarez-Torres v. United States*, 523 U.S. 224, 239-47 (1998); *see Alleyne*, 133 S. Ct. at 2161 n.1 ("In [*Almendarez-Torres*], we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today."). Our established rule that a jury need not find that an additional § 924(c) offense is a "second or subsequent" conviction, *United States* v. *Campbell*, 300 F.3d 202, 212-13 (2d Cir. 2002), is thus unaffected by *Alleyne*.

Hisan Lee also challenges his sentences under § 924(c) – 5 years consecutive for the first conviction and 25 years consecutive for the second conviction – by arguing that *United States* v. *Whitley*, 529 F.3d 150 (2d Cir. 2008), as extended by *United States v. Williams*, 558 F.3d 166 (2d Cir. 2009), prohibits the imposition of such sentences if a defendant is also subject to another, longer mandatory minimum. While Hisan Lee's characterization of *Whitley* and *Williams* is correct, those cases are no longer good law. As we acknowledged in *United States* v. *Tejada*, 631 F.3d 614, 619 (2d Cir. 2011),

24

*Whitley* and *Williams* were abrogated by the Supreme Court's decision in *Abbott* v. *United States*, 562 U.S. 8 (2010). Therefore, Hisan Lee's argument is without merit.

**B. Substantive Reasonableness of Hisan Lee's Sentence**

Hisan Lee challenges his sentence of life imprisonment plus 30 years as unreasonable on the grounds that the stacking of § 924(c) sentences was erroneous, that he received ineffective assistance of counsel at trial, and that the jury instruction on reasonable doubt was erroneous. None of his objections has merit. Hisan Lee's claims that his trial counsel was ineffective because counsel failed to pursue a number of pre-trial investigative steps and trial strategies that he would have preferred concern his conviction rather than his sentence, and in any event, because they depend on information outside the record, are not ripe for review on direct appeal in the circumstances presented. Those claims may be presented in a motion pursuant to 28 U.S.C. § 2255. *See Massaro v. United States*, 538 U.S. 500, 505 (2003) (noting that § 2255 motion is ordinarily preferable to direct appeal for deciding claims of ineffective assistance of counsel). His objection to the reasonable doubt charge is similarly irrelevant to sentencing, and in any event, as discussed above, is without merit. Finally, the stacking of the § 924(c) sentences is required by statute. *Deal*, 508 U.S. at 131-32.

**C. Resentencing on the Narcotics Conspiracy Count (Waite)**

Finally, Waite argues, and the government agrees, that his case should be remanded for resentencing. The Fair Sentencing Act ("FSA"), Pub. L. No. 111-220, 124

25

Stat. 2372 (Aug. 3, 2010), raised the threshold quantity of crack that triggers a mandatory 20-year sentence above the amount for which the jury found Waite responsible. Waite was sentenced after passage of the FSA for pre-enactment criminal conduct, and the district court denied Waite and the government's request that the FSA be applied retroactively, sentencing Waite to § 841(b)(1)(A)'s mandatory minimum of 20 years, in accordance with our holding in *United States v. Acoff*, 634 F.3d 200, 202 (2d Cir. 2011). The Supreme Court subsequently held, however, that "Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders," *Dorsey v. United States*, 132 S. Ct. 2321, 2335 (2012), thus abrogating *Acoff*. The calculation of the applicable mandatory minimum by the district court, and Waite's sentence on the narcotics conspiracy count, were accordingly erroneous, and his case must be remanded for resentencing.

## CONCLUSION

For the reasons stated above, and in the accompanying opinion, the judgment of the district court is **AFFIRMED** in all respects, save that Waite's case is **REMANDED** for resentencing in accordance with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

26