*United States v. Waite*

# United States Court of Appeals
## For the Second Circuit

August Term 2020

Argued:  March 1, 2021
Decided:  August 31, 2021

No. 18-2651

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

SELBOURNE WAITE,

*Defendant-Appellant,*

HIBAH LEE, MARK GABRIEL, BOBBY MOORE, JR.,
ANDRE DAVIDSON, BOBBY SAUNDERS, CARMEN
MOORE, TYRONE MOORE, HISAN LEE, DELROY
LEE, ROBERT MORRISON, DAKWAN EDWARDS,
MARQUISH JONES, MARK HART, RAHEEM
TUCKER, DEMETRI YOUNG, CHRISTOPHER DIAZ,
ANTHONY MICHAEL DIAZ, PAUL LOVE, AARON
BIRCH, KEVIN BECKFORD, JERMELL FALZONE,
LEVAR GAYLE,

*Defendants.*[*]

---

[*] The Clerk of Court is respectfully directed to amend the case caption as set forth above.

Appeal from the United States District Court
for the Southern District of New York
No. 07-cr-00003, Loretta A. Preska, *Judge*.

Before:  CABRANES, RAGGI, and SULLIVAN, *Circuit Judges*.

Defendant-Appellant Selbourne Waite appeals from his conviction and sentence on four counts of using a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.  After this Court vacated Waite's original 2011 sentence, the district court (Loretta A. Preska, *J.*) resentenced Waite to a mandatory minimum term of 115 years' imprisonment.  Now on appeal for the second time, Waite argues that (1) his § 924(c) convictions, predicated on his commission of Hobbs Act robbery and attempted Hobbs Act robbery (as well as aiding and abetting the same), are invalid in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), because the predicate offenses do not constitute crimes of violence; (2) his revised 115-year sentence violates the Eighth Amendment's prohibition against cruel and unusual punishments following Congress's passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("First Step Act"); and (3) even if there is no *Davis* error or Eighth Amendment violation, this Court should nonetheless vacate his sentence and remand for resentencing so that the district court can reconsider Waite's sentence in view of the First Step Act.  This Court's decision in *United States v. McCoy*, 995 F.3d 32 (2d Cir. 2021), in which we held that attempted Hobbs Act robbery and aiding and abetting Hobbs Act robbery categorically qualify as crimes of violence, precludes Waite's *Davis* challenge to his § 924(c) convictions.  As to Waite's remaining arguments, we hold that the passage of the First Step Act does not render Waite's sentence cruel and unusual or otherwise warrant remand to the district court for yet another resentencing.

AFFIRMED.

MICHELLE ANDERSON BARTH, The Law Office of Michelle Anderson Barth, Burlington, VT, *for Defendant-Appellant*.

ANDREW CHAN (Thomas McKay, *on the brief*), Assistant United States Attorneys, *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

Defendant-Appellant Selbourne Waite appeals from his conviction and sentence based in part on four counts of using a firearm in furtherance of crimes of violence – specifically, actual and attempted Hobbs Act robbery (and aiding and abetting the same) – in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. Waite was first sentenced in 2011 principally to 125 years' imprisonment based on these counts of conviction and others, but this Court vacated his original sentence in 2016. *See United States v. Lee*, 660 F. App'x 8, 22–23 (2d Cir. 2016). On March 1, 2018, the district court resentenced Waite to 115 years' imprisonment, the then-applicable mandatory minimum sentence for Waite's counts of conviction. Now on appeal for the second time, Waite argues that (1) four of his § 924(c) convictions are invalid in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), because the predicate offenses do not constitute crimes of violence; (2) his revised 115-year sentence violates the Eighth Amendment's bar on cruel and unusual punishments following Congress's passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("First Step Act"); and (3) even if there is

no *Davis* error or Eighth Amendment violation, this Court should nonetheless vacate his sentence and remand for resentencing to allow the district court to reconsider Waite's sentence in view of the First Step Act. For the reasons set forth below, we reject each of Waite's challenges and affirm the district court's judgment.

## I. BACKGROUND

### A. Offense Conduct

From approximately 1997 to 2007, Waite was a member of the Dekalb Avenue Crew (the "Crew"), a criminal organization centered around Dekalb Avenue in the Bronx that engaged in extensive drug trafficking, armed robberies, and murders. During that time, Waite sold drugs with other members of the Crew and regularly carried guns to protect the Crew's drug business. Waite also participated in numerous actual and attempted armed robberies, four of which are relevant to this appeal.

First, on October 4, 2004, Waite and another Crew member attempted to rob a man believed to have large amounts of cocaine and cash in a safe in his house. The victim was home, however, and when he confronted the robbers, Waite shot

4

at him but missed. Waite and his co-conspirator successfully made away with the safe, but it turned out to be empty.

Second, on January 31, 2005, Waite and three other Crew members robbed the apartment of a rival drug trafficker. They entered the apartment brandishing firearms, and when they encountered a young woman babysitting the drug dealer's infant child, they tied up the babysitter and held her at gunpoint, demanding to know where the drug dealer's money was stashed. The robbers ultimately stole $20,000 in cash.

Third, on March 24, 2005, Waite and two other Crew members committed a robbery on Paulding Avenue in the Bronx. After Waite and the Crew members pulled up next to the victim in their car, Waite got out of the car carrying a gun and demanded money from the victim. When the victim resisted, Waite fired several shots as a threat. Waite ultimately took a bag from the victim containing $8,000 to $10,000 in cash.

Finally, on June 9, 2005, Waite and two other Crew members attempted to rob three suspected drug dealers of approximately five pounds of marijuana. When the robbery went awry, one of Waite's co-conspirators fired his gun in the air to give Waite and the other co-conspirator an opportunity to get away.

**B.     Indictment and Trial**

On February 20, 2008, Waite and other members of the Crew were charged in a thirty-five-count superseding indictment.  With respect to each of the four completed and attempted robberies discussed above, Waite was charged with two counts of Hobbs Act robbery (and aiding and abetting the same), in violation of 18 U.S.C. §§ 1951 and 2; two counts of attempted Hobbs Act robbery (and aiding and abetting the same), in violation of 18 U.S.C. §§ 1951 and 2; and four counts of using a firearm in furtherance of those four crimes of violence, all in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.

Waite was also charged with:  (1) a substantive violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961, 1962(c); (2) RICO conspiracy, in violation of 18 U.S.C. § 1962(d); (3) conspiracy to traffic narcotics, in violation of 21 U.S.C. § 846; (4) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; and (5) use of a firearm in furtherance of the charged narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. Finally, Waite was charged with four crimes premised on the murder and attempted robbery of Bunny Campbell, a suspected rival drug dealer:  (1) murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 2; (2) attempted

6

Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2; (3) use of a firearm in furtherance of a crime of violence (the attempted Hobbs Act robbery), in violation of §§ 924(c)(1)(A) and 2; and (4) causing death with a firearm in the course of a § 924(c) offense, in violation of 18 U.S.C. §§ 924(j)(1) and 2.[1]

Waite proceeded to trial, and he was convicted on all counts except for those involving the murder and attempted robbery of Bunny Campbell. As relevant to this appeal, the jury was instructed on aiding-and-abetting liability for all of the Hobbs Act robbery offenses and attempted Hobbs Act robbery offenses. The jury verdict form did not require the jury to specify whether Waite's § 924(c) convictions were predicated on an aiding-and-abetting theory or on Waite's direct liability for those offenses.

## C. Original Sentencing, First Appeal, and Resentencing

On August 22, 2011, the district court (Barbara S. Jones, *J.*) sentenced Waite to 125 years' imprisonment, consisting of a mandatory minimum term of 20 years' imprisonment for the narcotics conspiracy, a mandatory minimum consecutive term of 105 years' imprisonment for the five § 924(c) convictions, and concurrent

---

[1] Waite was also charged in the superseding indictment with another robbery, as well as a § 924(c) count predicated on that robbery, but Waite was not tried on these counts, and they were subsequently dismissed along with all other open counts from earlier indictments at the time of Waite's sentencing.

sentences of time served on the remaining RICO and Hobbs Act robbery counts. In calculating this original sentence, the district court found that the Fair Sentencing Act of 2010, Pub. 111-220, 124 Stat. 2372 (2010) ("Fair Sentencing Act"), did not apply retroactively to Waite's underlying offense conduct, which was consistent with this Court's precedent at the time. *See United States v. Acoff*, 634 F.3d 200, 202 (2d Cir. 2011). Accordingly, the district court determined that Waite's narcotics conspiracy conviction had a mandatory minimum sentence of 20 years instead of 10 years.

Waite appealed, and on August 24, 2016, this Court affirmed his convictions and sentence in all respects except one: on appeal, the government conceded that the Supreme Court's decision in *Dorsey v. United States*, 567 U.S. 260 (2012), made clear that the Fair Sentencing Act applied retroactively to Waite's narcotics conspiracy conviction. *Lee*, 660 F. App'x at 22. We therefore remanded for resentencing in light of *Dorsey*. *Id.* at 22–23.

On March 1, 2018, the district court (now Loretta A. Preska, *J.*) resentenced Waite to a term of 115 years' imprisonment. Consistent with this Court's decision and *Dorsey*, the district court imposed a 10-year mandatory minimum term of imprisonment for Waite's narcotics conspiracy conviction. But other than this one

change, the district court imposed the same sentence – including the mandatory minimum consecutive sentences on the § 924(c) counts – that it had originally imposed in 2011.

## D.     Present Appeal, the First Step Act, and *Davis*

Waite again appealed from his conviction and sentence, though not without some logistical difficulties.  While Waite's *pro se* notice of appeal is dated March 3, 2018, it was not filed in the district court until September 5, 2018.  According to an affidavit submitted to the district court by Waite's trial counsel, Waite – contrary to his counsel's advice – had mailed his *pro se* notice of appeal from the Metropolitan Detention Center "to the Clerk of Court at '1500 Pearl Street.'"  Aff. of Susan V. Tipograph ¶ 4, *United States v. Waite*, No. 07-cr-00003 (S.D.N.Y. Jan. 24, 2019), ECF No. 792-1.  After Waite was returned to his designated long-term detention facility, his *pro se* notice of appeal was returned to him on August 14, 2018 unopened for having an incorrect address.  *Id.* ¶ 5.  Waite then re-mailed the notice of appeal to the correct address – at 500 Pearl Street – and it was docketed on September 5, 2018.  *Id.* ¶ 6.

When Waite first filed his notice of appeal in September 2018, his original counsel filed a brief, pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting

that Waite's appeal presented no non-frivolous issues worthy of review. While Waite's appeal has been pending, however, two key developments have significantly changed the legal landscape surrounding 18 U.S.C. § 924(c).

First, on December 21, 2018, the First Step Act was signed into law. *See* Pub. L. No. 115-391, 132 Stat. 5194. As relevant here, § 403(a) of the First Step Act eliminated so-called § 924(c) "stacking," whereby multiple § 924(c) charges in the same indictment could yield enhanced consecutive mandatory minimum sentences under § 924(c)(1)(C) if a defendant was convicted on more than one of the charged § 924(c) counts. *See United States v. Eldridge*, 2 F.4th 27, 40 (2d Cir. 2021). When Waite was originally sentenced in 2011 (and when he was resentenced in March 2018), his second and subsequent § 924(c) convictions each carried an additional 25-year mandatory minimum consecutive sentence. If Waite had been sentenced after passage of the First Step Act, however, his second and subsequent § 924(c) convictions would have required consecutive mandatory minimum sentences of five years each.[2] *See* 18 U.S.C. § 924(c)(1)(A)(i); *see also id.*

---

[2] Although Waite's superseding indictment alleged that a gun was either brandished or fired in the commission of each of the four predicate crimes of violence – which would have yielded seven- or ten-year consecutive sentences, respectively, *see* 18 U.S.C. § 924(c)(1)(A)(ii)–(iii) – the jury was not asked to issue a special verdict finding that the guns were brandished or fired. Consequently, the mandatory minimum consecutive sentence for each would now be five years.

§ 924(c)(1)(C) (as amended by Section 403(a) of the First Step Act, 132 Stat. at 5221–22). The upshot is this: if Waite were convicted of precisely the same charges and sentenced for the first time today, he would face a mandatory minimum term of 30 years' imprisonment rather than 115 years' imprisonment.[3]

Second, on June 24, 2019, the Supreme Court issued its decision in *United States v. Davis*, 139 S. Ct. 2319. In *Davis*, the Supreme Court held that one of § 924(c)'s definitions of a predicate crime of violence, the so-called "residual clause," 18 U.S.C. § 924(c)(3)(B), was unconstitutionally vague. 139 S. Ct. at 2323–24, 2336. After *Davis*, only offenses that qualify as crimes of violence under the still-valid "elements clause," 18 U.S.C. § 924(c)(3)(A), can serve as predicate crimes of violence under § 924(c)(1)(A). *See Eldridge*, 2 F.4th at 36.

Following these two legal developments, we permitted Waite's original counsel to withdraw and appointed him new appellate counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. We also granted Waite's request to submit

---

[3] This calculation assumes that Waite was properly sentenced to a 10-year mandatory minimum sentence on the narcotics conspiracy count, which Waite does not challenge on appeal.

11

a supplemental *pro se* brief raising additional arguments beyond those in his counseled brief.[4]

## II. Discussion

### A. Timeliness of Waite's Appeal

Before addressing the merits of Waite's challenges, we first consider whether his appeal is timely. Under Rule 4(b) of the Federal Rules of Appellate Procedure, a criminal defendant's "notice of appeal must be filed in the district court within 14 days after . . . the entry of either the judgment or the order being appealed." Fed. R. App. P. 4(b)(1)(A)–(b)(1)(A)(i). Waite's notice of appeal was dated March 3, 2018 – within 14 days of his judgment of conviction filed on March 2, 2018 – but it was not filed in the district court until September 5, 2018, because Waite had originally mailed the notice of appeal from prison to the incorrect address.

---

[4] In his *pro se* opposition to his original counsel's *Anders* brief, Waite argued that his original counsel "rendered ineffective assistance of appellate counsel to [Waite] in this instant appeal." Waite's *Anders* Opp'n at 1. In his subsequently filed supplemental *pro se* brief, however, Waite no longer presses that claim. To the extent that Waite still intends to raise his ineffective assistance argument, we decline to address that issue on direct appeal, without prejudice to Waite raising it in a collateral proceeding. *See United States v. Gaskin*, 364 F.3d 438, 467–68 (2d Cir. 2004) ("This [C]ourt is generally disinclined to resolve ineffective assistance claims on direct review . . . because the district court is 'best suited to developing the facts necessary to determining the adequacy of representation . . . .'" (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003))).

Under the rule established in *Houston v. Lack*, 487 U.S. 266 (1988), which has since been codified in the Federal Rules, *see* Fed. R. App. P. 4(c)(1), "a *pro se* prisoner's notice of appeal is deemed 'filed' at the moment of delivery to prison authorities for forwarding to the district court." *Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (quoting *Houston*, 487 U.S. at 270). This Court has not yet decided whether this so-called "prison mailbox rule" applies to a case such as Waite's, where (1) the prisoner is represented by counsel at the time the notice of appeal is mailed; and (2) the untimely filing is due to the prisoner's use of an incorrect mailing address, rather than to delays in a prison's mail system beyond a prisoner's control. *But see id.* at 563 ("Our cases cast considerable doubt on the proposition that *Houston* applies to delays other than those that derive directly from the fact of incarceration and from problems involving prison mail."); *Knickerbocker v. Artuz*, 271 F.3d 35, 37 (2d Cir. 2001) (declining to apply the prison mailbox rule where, "unlike the situation addressed in *Houston*, the delay . . . [was] not attributable to prison officials").

We ultimately need not decide whether the prison mailbox rule applies to Waite's case, however, because the government has affirmatively waived reliance on untimeliness as a basis for dismissing Waite's appeal. *See* Gov't Br. at 7 n.2 ("In

13

light of the unusual circumstances regarding the timing of [Waite's] notice of appeal, the [g]overnment will not assert untimeliness as a ground for dismissal of the appeal" (internal citation omitted)).  The timeliness of a defendant's notice of appeal under Rule 4(b) is not a jurisdictional bar to considering an appellant's claims, even though "Rule 4(b) is mandatory and inflexible" if the government properly objects to the untimeliness of an appeal.  *United States v. Frias*, 521 F.3d 229, 234 (2d Cir. 2008).  In light of the government's choice to not object to Waite's appeal on the basis of untimeliness, we therefore exercise our discretion to reach the merits of Waite's challenges to his conviction and sentence.

**B.     Waite's *Davis* Challenges**

Waite attacks four of his § 924(c) convictions (on Counts 25, 26, 27, and 32 of the fourth superseding indictment) on the grounds that (1) attempted Hobbs Act robbery and (2) aiding and abetting an attempted or successful Hobbs Act robbery no longer serve as valid predicate crimes of violence for a § 924(c) conviction after the Supreme Court's decision in *Davis*.  Because Waite did not raise these

challenges to his convictions before the district court, as he concedes, we review them only for plain error. *See Eldridge*, 2 F.4th at 36 (citing Fed. R. Crim. P. 52(b)).[5]

Waite's *Davis* challenges fail because we recently confronted and rejected these same arguments in *United States v. McCoy*, 995 F.3d 32 (2d Cir. 2021). Like Waite, the defendants in *McCoy* argued that their § 924(c) convictions were invalid because, after *Davis*, attempted Hobbs Act robbery and attempted or actual Hobbs Act robbery premised on an aiding-and-abetting theory did not constitute crimes of violence under the still-valid "elements clause" of § 924(c). 995 F.3d at 55–57. We were unpersuaded by both of these arguments. First, we held that attempted Hobbs Act robbery "qualifies as a crime of violence under § 924(c)" even after *Davis*. *Id.* at 57.[6] Second, we concluded that a § 924(c) conviction predicated on

---

[5] "Before an appellate court can correct an error not raised [in the district court], there must be (1) error, (2) that is plain, and (3) that affects substantial rights." *Eldridge*, 2 F.4th at 36 (internal quotation marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 36–37 (internal quotation marks omitted). It is the defendant's burden to establish each of these four requirements for plain-error relief, "including that his substantial rights were affected." *Id.* at 37 (citing *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021)). Here, the standard of review is ultimately immaterial because we conclude that the district court did not err in entering a judgment of conviction on Waite's § 924(c) counts.

[6] We also reaffirmed our previous holding in *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), that *substantive* Hobbs Act robbery is a crime of violence, explaining that "*Hill*'s conclusion . . . was not eroded by the Supreme Court's subsequent ruling in *Davis*." *McCoy*, 995 F.3d at 54. In his supplemental *pro se* brief, Waite appears to argue that his § 924(c) convictions predicated on substantive Hobbs Act robbery (even in the absence of an aiding-and-abetting theory) are invalid

aiding and abetting a crime of violence is equivalent to one predicated on the commission of a crime of violence as a principal, so the defendants' § 924(c) convictions based on their guilt as aiders and abettors of Hobbs Act robbery and attempted robbery were not error. *Id.* at 58. Our decision in *McCoy* thus forecloses Waite's challenges to his convictions and sentence premised on *Davis*.[7]

## C.  Waite's Eighth Amendment Challenge Based on the First Step Act

Waite next argues that, even if *Davis* does not render his § 924(c) convictions invalid, his 115-year term of imprisonment violates the Eighth Amendment's bar on cruel and unusual punishments. We generally review *de novo* whether a sentence violates the Eighth Amendment. *See United States v. Varrone*, 554 F.3d 327, 331 (2d Cir. 2009).[8] Specifically, Waite claims that the passage of the First Step Act

___

in light of *Davis*. But Waite's argument is squarely foreclosed by *Hill* and *McCoy*. *See also United States v. Barrett*, 937 F.3d 126, 128 (2d Cir. 2019) ("Hobbs Act robbery . . . can be identified as a crime of violence under § 924(c)(3)(A) applying the traditional, elements only, categorical approach not at issue in *Davis*.").

[7] The Supreme Court recently granted *certiorari* on the question of whether attempted Hobbs Act robbery remains a crime of violence following *Davis*. *See United States v. Taylor*, No. 20-1459, 2021 WL 2742792, at *1 (U.S. July 2, 2021). We remain bound by *McCoy*, however, "unless and until [that decision is] reversed by the Supreme Court or by this court sitting *en banc*." *United States v. Ng Lap Seng*, 934 F.3d 110, 133 n.25 (2d Cir. 2019).

[8] In a single footnote, the government argues that Waite's Eighth Amendment challenge is barred by the mandate rule because (1) even though Waite raised the challenge at his first sentencing, he did not press it during his first appeal and (2) this Court issued a limited remand following that appeal. *See* Gov't Br. at 32 n.12. Because the government failed to develop this argument more fully in its brief, however, we decline to address it here. *See City of New York v. Mickalis Pawn*

16

shows that his sentence is disproportionately long as compared to the severity of his crimes of conviction, since the First Step Act "represents the nation's trend toward more humane sentences for [§] 924(c) offenses."  Waite's Br. at 49.  While we agree with Waite that the First Step Act marked a sea change in federal sentencing practices, the passage of that Act alone does not render Waite's sentence cruel and unusual within the meaning of the Eighth Amendment.

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  "In identifying cruel and unusual punishments, the Supreme Court has not limited itself to historical conceptions of impermissible sanctions, but has looked to the evolving standards of decency that mark the progress of a maturing society."  *United States v. Reingold*, 731 F.3d 204, 210 (2d Cir. 2013) (internal citation and quotation marks omitted).  Accordingly, "[a] punishment will be deemed 'cruel and unusual' not only when it is 'inherently barbaric,' but also when it is 'disproportionate to the crime.'"  *Id.* (quoting *Graham v. Florida*, 560 U.S. 48, 59 (2010)); *see also Harmelin v. Michigan*, 501 U.S. 957, 997–98 (1991)

---

*Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("We ordinarily deem an argument to be forfeited where it has not been sufficiently argued in the briefs, such as when it is only addressed in a footnote." (internal citation and quotation marks omitted)).

17

(Kennedy, J., concurring in part and concurring in the judgment) (tracing the history of the Supreme Court's "narrow proportionality principle").[9]

Where a defendant argues that his term-of-years sentence is disproportionate to his crime of conviction, this Court applies a two-step analysis. First, we "compar[e] the gravity of the offense and the severity of the sentence." *Reingold*, 731 F.3d at 211 (quoting *Graham*, 560 U.S. at 60). In "the rare case in which this threshold comparison leads to an inference of gross disproportionality," we proceed to the second step, at which we "compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* (internal quotation marks and alterations omitted). "Only if this comparative analysis validates an initial judgment that the sentence is grossly disproportionate will the sentence be deemed cruel and unusual." *Id.* (internal quotation marks and alterations omitted).

---

[9] As both this Court and the Supreme Court have recognized, Justice Kennedy's concurrence in *Harmelin* is "'controlling' in its discussion of constitutional proportionality," under the rule established in *Marks v. United States*, 430 U.S. 188 (1977). *Reingold*, 731 F.3d at 210 n.11 (quoting *Graham*, 560 U.S. at 59); *see also Marks*, 430 U.S. at 193 ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotation marks omitted)).

18

"[O]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [have been] exceedingly rare." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in the judgment) (internal quotation marks omitted). Moreover, we have held that "[l]engthy prison sentences, even those that exceed any conceivable life expectancy of a convicted defendant, do not violate the Eighth Amendment's prohibition against cruel and unusual punishment[s] when based on . . . statutorily mandated consecutive terms." *United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003). This is because "statutorily mandated sentences represent not the judgment of a single judge but the collective wisdom of the . . . Legislature and, as a consequence, the . . . citizenry." *Reingold*, 731 F.3d at 220 (internal quotation marks omitted).

As an initial matter, although Waite's Eighth Amendment challenge to his sentence focuses on the First Step Act as a reflection of evolving standards of decency in society, at times in his briefing, Waite also appears to challenge the proportionality of his mandatory minimum 115-year sentence outright. To the extent that Waite does so, his argument is squarely foreclosed by this Court's Eighth Amendment jurisprudence. Indeed, we have repeatedly rejected Eighth Amendment challenges to actual or *de facto* life sentences imposed for serious

19

criminal conduct comparable to that for which Waite was convicted. *See, e.g.*, *United States v. Caracappa*, 614 F.3d 30, 44–45 (2d Cir. 2010) (affirming 80-year sentence for drug trafficking offenses integral to broader pattern of criminal conduct); *United States v. Snype*, 441 F.3d 119, 152 (2d Cir. 2006) (affirming life sentence for recidivist defendant convicted of violent bank robbery). Moreover, as the First Circuit recently explained when rejecting an Eighth Amendment challenge nearly identical to Waite's, "[n]o circuit has held that consecutive sentences under § 924(c) violate the Eighth Amendment." *United States v. Rivera-Ruperto*, 852 F.3d 1, 18 (1st Cir. 2017) (internal quotation marks omitted) (collecting cases and affirming 161-year sentence, 130 years of which were attributable to mandatory minimum penalties under § 924(c)).[10] In short, the gravity of Waite's

---

[10] We likewise reject Waite's arguments, raised in his supplemental *pro se* brief, that the version of § 924(c)(1) in effect when he was resentenced – which mandated consecutive 25-year terms for each "second or subsequent conviction" under § 924(c), *see* 18 U.S.C. § 924(c)(1)(C)(i) (2011) – was "unconstitutionally vague" and "unconstitutional because it unfairly target[ed] minorities, specifically African-Americans, such as [Waite]." Waite's *Pro Se* Br. at 9, 12. Waite's vagueness challenge is foreclosed by the Supreme Court's decision in *Deal v. United States*, 508 U.S. 129 (1993), which held that the phrase "second or subsequent conviction" in a previous version of § 924(c)(1) was not "facially ambiguous." *Id.* at 131; *see also United States v. Hungerford*, 465 F.3d 1113, 1117–18 (9th Cir. 2006) (rejecting claim that § 924(c)(1) was "unconstitutionally vague" in light of *Deal*). As for Waite's argument based on the disparate impact of § 924(c)(1), the only case he cites in support is then-Judge Gleeson's decision in *United States v. Holloway*, No. 01-cv-1017, 2014 WL 1942923 (E.D.N.Y. May 14, 2014), which Waite claims "concluded . . . that the stacking penalty provision of [§ 924(c)] was unconstitutional, as it unfairly targeted black defendant[s]." Waite's *Pro Se* Br. at 11 n.2. But Judge Gleeson did not hold that § 924(c)(1) was unconstitutional; rather, the defendant's § 924(c) convictions were vacated on consent of the government and were

20

offense conduct – which included participating in a racketeering enterprise, conspiring to distribute narcotics and to commit robberies, committing a number of specific robberies, and using firearms in furtherance of those crimes – does not lead to an inference of gross disproportionality.

That leaves Waite's "evolving standards of decency" argument, premised on the fact that, since his resentencing, Congress has amended § 924(c)(1)(C) through the First Step Act to eliminate the type of § 924(c) "stacking" that led to his 115-year mandatory minimum sentence. *See Eldridge*, 2 F.4th at 40 (explaining that, after passage of the First Step Act, "defendants whose § 924(c) convictions resulted from a single prosecution . . . [are] no longer . . . subject to the enhanced" mandatory consecutive penalty provided by § 924(c)(1)(C)). But this legislative change does not transform what would otherwise be a constitutionally sound sentence into a cruel and unusual one, for the simple reason that Congress expressly declined to make the First Step Act's amendment to § 924(c)(1)(C) fully retroactive. *See* First Step Act, § 403(b), 132 Stat. at 5222 (providing that the First

---

not altered on constitutional grounds. *See United States v. Holloway*, 68 F. Supp. 3d 310, 314–16 (E.D.N.Y. 2014). Because here the government did not consent to vacating Waite's § 924(c) convictions as it did in *Holloway*, that decision (even if it were binding on us, which it is not) provides no basis for vacating Waite's sentence. *Accord United States v. Owens*, 996 F.3d 755, 757 n.1 (6th Cir. 2021).

21

Step Act's amendments to § 924(c)(1)(C) apply only to an "offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment"); *see also Eldridge*, 2 F.4th at 40.

Indeed, if we were to accept Waite's challenge to his sentence premised on the First Step Act, every non-retroactive change in criminal penalties would risk running afoul of the Eighth Amendment merely because those defendants sentenced before the change faced different penalties than those sentenced after the legislative change. But as the Supreme Court has explained, "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." *Dorsey*, 567 U.S. at 280. This is the nature of Congress's authority to decide the retroactive effect of new statutory provisions. Unless Congress provides otherwise, diminished penalties in criminal statutes do not apply retroactively by default. *See id.* at 272 (citing Act of Feb. 25, 1871, § 4, 16 Stat. 431, 432 (1871), codified at 1 U.S.C. § 109, the general "federal saving statute"); *see also Eldridge*, 2 F.4th at 41 (contrasting "judicial pronouncements of new constitutional rules of criminal procedure[, which] are to be applied in cases on direct appeal," with "congressional statutes to which the

general saving statute applies" (internal quotation marks omitted)).  Thus, we reject the contention that the passage of a new statute lessening the penalties applicable to a crime suggests that pre-enactment sentences for the same crime run afoul of the Eighth Amendment.

Notably, after passage of the Fair Sentencing Act, several of our sister circuits have rejected Eighth Amendment challenges analogous to the one Waite raises here.  *See United States v. Blewett*, 746 F.3d 647, 660 (6th Cir. 2013) (*en banc*); *United States v. Lowe*, 498 F. App'x 782, 786 (10th Cir. 2012); *United States v. Speed*, 656 F.3d 714, 720 (7th Cir. 2011).  As the Sixth Circuit explained in its *en banc* decision in *Blewett*, "the Eighth Amendment is not a ratchet that makes a harsher system of penalties unconstitutional the moment a more lenient one is [] adopted, a theory that would have the perverse effect of discouraging lawmakers from *ever* lowering criminal sentences."  746 F.3d at 660 (emphasis in original).

Although *Blewett* concerned the Fair Sentencing Act's reduced mandatory minimum penalties for crack cocaine offenses, *see id.* at 649, we think that the same reasoning applies with equal force to the First Step Act's amendments to § 924(c). The First Step Act marked a significant change in the mandatory minimum sentences applicable for § 924(c) convictions, but Congress made a deliberate

23

choice not to give those amendments fully retroactive effect. That decision – no less than the reforms to § 924(c) themselves – "represent[s] . . . the collective wisdom of the . . . Legislature and, as a consequence, the . . . citizenry." *Reingold*, 731 F.3d at 220 (internal quotation marks omitted). Accordingly, we will not disturb that legislative choice, and we reject Waite's Eighth Amendment challenge to his sentence premised on the First Step Act.

**D.      Waite's Request for Remand in the Absence of a Sentencing Error**

Finally, Waite argues that, even if his conviction and sentence are legally sound, we should nonetheless remand for resentencing so that he may take advantage of the First Step Act's amendments to § 924(c)(1)(C), which apply if a sentence has not yet been "imposed" as of the effective date of the Act. *See Eldridge*, 2 F.4th at 40. Waite asserts that "the district court should have the opportunity to reconsider its sentence *de novo* in light of . . . unwarranted sentencing disparities" caused by the "unfortunate timing" of his resentencing. Waite's Br. at 45–46. In other words, because Waite would face a drastically reduced mandatory minimum penalty if he were sentenced for the first time today, after the passage of the First Step Act, Waite contends that "this Court should remand to the district court for reconsideration of its sentence in light of the [First Step Act]." *Id.* at 49.

24

On a handful of occasions, this Court has remanded to the district court for "clarification" or "further consideration," despite the lack of any patent substantive or procedural error in the sentence imposed. *See, e.g.*, *United States v. Brown*, 935 F.3d 43, 47–48 (2d Cir. 2019) (collecting cases); *United States v. Algahaim*, 842 F.3d 796, 800 (2d Cir. 2016) (concluding that "the sentences were [not] imposed in error" but nonetheless remanding "to permit the sentencing judge to consider whether the significant effect of the loss enhancement, in relation to the low base offense level, should result in a non-Guidelines sentence"). In these cases (which are exceedingly rare), this Court typically has not articulated a specific procedural mechanism for its remand, but in each, it appears that the primary motivation for remanding for resentencing (or "clarification") was a recent development in the law that prompted the panel to doubt whether the district court was fully aware of its sentencing discretion.

In *Brown*, for example, we considered the Supreme Court's recent decision in *Dean v. United States*, 137 S. Ct. 1170 (2017), which held that a sentencing judge is not prohibited from considering the severity of a mandatory consecutive minimum penalty when sentencing a defendant on a separate count. *See Brown*, 935 F.3d at 46. *Dean* had been decided before the district court sentenced the

25

defendant, but because "neither the prosecutor nor the defense counsel called *Dean* to the attention of the sentencing judge," the panel was "uncertain whether [the sentencing judge] was aware of the discretion permitted by *Dean*." *Id.* at 47. This was particularly true, we explained in *Brown*, because *Dean* abrogated an earlier Second Circuit decision holding to the contrary. *See Brown*, 935 F.3d at 46 (citing *United States v. Chavez*, 549 F.3d 119, 135 (2d Cir. 2008)). Accordingly, we concluded that "a remand for resentencing is appropriate in light of our now-abrogated decision in *Chavez* and the failure of both counsel and the Probation Office to bring *Dean* to the [d]istrict [c]ourt's attention." *Id.* at 49.

Waite's case is entirely distinguishable from *Brown* and the line of cases it represents. There can be no argument that the district court here failed to understand its sentencing discretion. Indeed, the district court largely had no discretion to exercise; it imposed the mandatory minimum sentence dictated by Waite's convictions following a limited remand after Waite's first appeal.

Waite argues, however, that his case is most analogous to a single outlier case that did not involve a remand for "clarification" of a sentence, *United States v. Jones*, 878 F.3d 10 (2d Cir.), *amended* (2d Cir. Oct. 5, 2017). In *Jones*, we initially vacated the defendant's sentence on the grounds that the residual clause of

26

§ 4B.1.1(a) of the Sentencing Guidelines was unconstitutional. *Id.* at 14. Before the district court could resentence the defendant, however, the Supreme Court granted *certiorari* on that same issue in *Beckles v. United States*, 137 S. Ct. 886 (2017), so this Court vacated its opinion. *Jones*, 878 F.3d at 14. In *Beckles*, the Supreme Court then *upheld* the residual clause of § 4B1.1(a), but by then the Sentencing Commission had already revised the Guidelines to remove that provision. *Id.* at 14 & n.1. Thus, despite this amendment to the Guidelines, *Beckles* foreclosed the defendant's challenge in *Jones*, prompting this Court to issue a second decision that affirmed the defendant's original sentence. *See United States v. Jones*, No. 15-1518-cr, slip op. at 21 (2d Cir. Sept. 11, 2017).

Nevertheless, after the *Jones* panel issued its second decision, "it was called to [the Court's] attention that 28 U.S.C. § 2106 permits affirmances and remands for further proceedings in the interest of justice, and has been applied in criminal situations." *Jones*, 878 F.3d at 24 n.6 (Calabresi, J., concurring). Apparently prompted by this revelation, the panel majority withdrew its second decision and issued a third decision affirming the sentence, but also remanding to the district court "for further consideration as may be just under the circumstances." *Id.* at 20. The lead opinion in *Jones* does not explain why the interest of justice warranted

27

remanding to the district court. But in a separate concurrence, Judge Calabresi, joined by Judge Hall, wrote that remand was warranted because, "as a result of timing quirks . . . , Jones receive[d] a very, very high sentence in contrast with almost every similarly situated defendant." *Id.* at 24 (Calabresi, J., concurring).

Waite contends that the "timing quirks" in his case have likewise yielded a disproportionately long sentence compared to similarly situated defendants because the First Step Act, which would have significantly reduced the applicable mandatory minimum penalty for his § 924(c) convictions, was enacted nine months after he was resentenced. He argues that we should therefore take a similar course to the one taken in *Jones*: affirm Waite's sentence yet remand for further resentencing "in the interest of justice." *Id.* at 24 n.6 (Calabresi, J., concurring). We decline to do so. For at least three reasons, Waite's case is distinguishable from *Jones*, and we conclude that remanding for resentencing would be improper based on the circumstances presented here.

First, it is not even clear that Waite would be subject to a lower mandatory minimum sentence on remand. In *Jones*, the Court considered a provision of the advisory Guidelines. *See id.* at 14. Thus, even though the district court on remand was required to calculate the defendant's Guidelines range as it existed at the time

he was originally sentenced, *see* 18 U.S.C. § 3742(g)(1), the district court was at least

*empowered* to impose a different sentence on remand.  Here, by contrast, it is an

open question in this Circuit whether the First Step Act's amendments to § 924(c)

"stacking" apply when a defendant is resentenced after a remand from this Court.

*See Eldridge*, 2 F.4th at 41 n.17.  Our sister circuits have divided on that question,

*see id.* (collecting cases), so it is not a foregone conclusion that Waite would be

entitled to a different mandatory minimum sentence on remand.[11]

Second, the procedural history of Waite's case is markedly different from

the one presented in *Jones*.  In that case, due to the timing of this Court's first

opinion, the defendant narrowly missed being resentenced in the context of a

substantively lower applicable Guidelines range.  *See Jones*, 878 F.3d at 23–24

(Calabresi, J., concurring).  Here, Waite's original sentencing occurred in 2011, over

seven years before the passage of the First Step Act and its amendment to

§ 924(c)(1)(C).  If, at that original sentencing, the district court had applied the Fair

---

[11] Moreover, even if we were to hold that § 403(a) of the First Step Act applies on remand after a defendant's original sentence has been *vacated*, it does not automatically follow that the same would be true if we were to *affirm* yet remand, as this Court did in *Jones*. *Cf. United States v. Bethea*, 841 F. App'x 544, 551 (4th Cir. 2021) (holding that the First Step Act's amendments to § 841(b)(1)(A) applied at a resentencing because the "*vacated* sentence" imposed prior to enactment of the First Step Act was "a legal nullity" (emphasis added)).  Here, there is clearly no vacated sentence.

Sentencing Act retroactively (which would have yielded a mandatory minimum 115-year sentence instead of a 125-year sentence), this case would have concluded in 2016 when this Court affirmed Waite's sentence in all other respects. *See Lee*, 660 F. App'x at 22–23. Thus, it is only through a series of highly unusual developments that Waite's case is still pending on direct review more than 10 years after he was originally sentenced – far longer than the time between sentencing and remand in *Jones*. *See Jones*, 878 F.3d at 13–14.

Finally, as with his Eighth Amendment challenge, Waite's request for a sentencing remand even though the district court did not err in computing his sentence effectively asks this Court to circumvent the choice of Congress when it decided not to make § 403(a) of the First Step Act fully retroactive. While various courts of appeals are split on whether § 403(a) applies at resentencing following a remand, they are unanimous in holding that "First Step Act § 403 does not extend to defendants who were sentenced prior to the Act's enactment but ha[ve] not yet exhausted their direct appeals." *United States v. Henry*, 983 F.3d 214, 220 (6th Cir. 2020) (collecting cases). We recently joined our sister circuits on this issue, explaining that, "[h]ad Congress wanted, it could have applied the revised penalty structure of Section 403(a) of the First Step Act to sentences that were not yet final

(including cases . . . [that are] still pending on direct appeal)." *Eldridge*, 2 F.4th at 41. Congress opted for a different approach, however, and "keyed the new law to whether the sentence had 'not been imposed' as of the date of the enactment." *Id.* Thus, in *Eldridge*, we held that the defendant, "whose sentence was imposed before the passage of the First Step Act" and whose case was still pending on direct appeal, "[was] not entitled to the lower sentence" yielded by the First Step Act's amendments to § 924(c) that eliminated "stacking." *Id.*

As in *Eldridge*, Waite's case is still pending on direct appeal, and the First Step Act was enacted after his (revised) sentence was imposed by the district court. Holding that Waite's case should be remanded again for the district court to take into account the First Step Act would therefore create the very sentencing disparity that Waite argues we should avoid, since the defendants in *Eldridge* and the analogous cases from our sister circuits – who, like Waite, were sentenced before enactment of the First Step Act – were unable to benefit from its provisions.

Indeed, in *United States v. Cruz-Rivera*, 954 F.3d 410 (1st Cir. 2020), the First Circuit declined to grant the same form of relief that Waite seeks here, albeit through a different procedural vehicle. In that case, the First Circuit had affirmed the defendant's § 924(c) convictions shortly before enactment of the First Step Act.

31

*Id.* at 411. The defendant then moved for the First Circuit to recall its mandate and remand for resentencing in light of the First Step Act. *Id.* at 412. The First Circuit denied the motion, reasoning that, "consistent with the usual practice in the federal system, Congress did not intend the amendment in § 403(a) of the First Step Act to compel the 're-opening [of] sentencing proceedings concluded prior to [the] new law's effective date.'" *Id.* at 413 (quoting *Dorsey*, 567 U.S. at 280). The same logic applies here: even if we were to assume that Waite could claim the benefits of § 403(a) of the First Step Act, remanding to the district court in the absence of a defect in Waite's conviction or sentence would improperly displace Congress's decision not to make § 403(a) of the First Step Act fully retroactive or at least applicable to cases pending on direct appeal. Accordingly, we decline to remand to the district court for resentencing in light of the First Step Act.

### III. CONCLUSION

We have reviewed all arguments raised by Waite on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the district court's judgment. Specifically, we hold:

> (1)    that this Court's recent decision in *United States v. McCoy*, 995 F.3d 32 (2d Cir. 2021), in which we held that attempted Hobbs Act robbery

and aiding and abetting Hobbs Act robbery categorically qualify as crimes of violence, precludes Waite's challenge to his § 924(c) convictions under *United States v. Davis*, 139 S. Ct. 2319 (2019);

(2)     that the passage of the First Step Act does not render Waite's sentence cruel and unusual in violation of the Eighth Amendment; and

(3)     that the passage of the First Step Act does not otherwise warrant remand to the district court for another resentencing.